# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEEGAN GABRIEL BAKER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-4615** |
| | : | |
| **CO' CROOKUS, _et al._,** | : | |
| **Defendants.** | : | |

### MEMORANDUM

**SLOMSKY, J.**                                        **DECEMBER 1, 2021**

Currently before the Court is an Amended Complaint filed by Plaintiff Keegan Gabriel Baker, a prisoner currently incarcerated at SCI-Chester, which raises constitutional claims pursuant to 42 U.S.C. § 1983, based on allegations that Baker was pepper-sprayed and denied medical attention.  Baker also seeks leave to proceed _in forma pauperis_.  For the following reasons, the Court will grant Baker leave to proceed _in forma pauperis_ and dismiss his claims without prejudice to amendment, with the exception of his excessive force claim, which will be permitted to proceed.

## I.      FACTUAL ALLEGATIONS

The Amended Complaint names the following Defendants, all of whom appear to be employed at SCI-Chester:  (1) Correctional Officer Strawther; (2) Sargent Stewart; (3) Lieutenant Valasquez; (4) Correctional Officer Patton; (5) Capt. Bocco; (6) Capt. Lorie Eason; (7) Superintendent Ken Eason; (8) Mrs. Morris; and (9) Correctional Officer Crookus.[1]  (ECF

---

[1] Defendant Strawther is, at one point, referred to as "Strawthers," and Defendant Crookus is, at one point, referred to as "Crokus."  It is unclear which spellings are correct.

No. 4 at 2-5.)[2]  Baker alleges that on September 15, 2021 in the Restricted Housing Unit ("RHU"), Strawther subjected him to oleoresin capsaicin ("OC") spray, allegedly in violation of Department of Correction's policy and in circumstances when "the use of force was not necessary." (*Id.* at 7.)  Baker alleges that at the time the OC spray was used, he was "in no way a threat to RHU staff [himself] or others" and that Strawther "never gave [him] a direct order" prior to using the spray. (*Id.* at 14.)  Baker claims that after spraying him, Strawther "walked away" without seeking medical attention for Baker. (*Id.*)  Baker alleges that, as a result of being sprayed, he sustained chemical burns and did not receive medical treatment because "it was not offered." (*Id.* at 7.)  He also claims to have suffered problems breathing and with his sinuses for which he received treatment fifteen days later. (*Id.*)

Baker avers that Defendant Stewart, identified as the RHU Sargent, and Defendant Valazquez, identified as the RHU lieutenant, arrived at the scene fifteen minutes after he was sprayed but did not seek medical assistance at that time even though they "knew" or were "aware" that Baker required medical attention. (*Id.* at 14-15.)  Defendant Patton allegedly did "nothing" to "alleviate [Baker's] pain and suffering" even though Patton was "outside [Baker's] door" after he was sprayed. (*Id.* at 15.)  Baker alleges that Defendant Crookus "was involved in the incident due to the fact he opened my wicket to hand me my meal tray," (*id.* at 14), and that Defendant Morris "of psychology was involved cause she was called after [Baker] was OC sprayed and she was trying to find out what happened." (*Id.* at 16.)  Baker named Captain Bocco, Captain Eason, and Superintendent Eason as Defendants because they are "in charge of" or "involved in" operating SCI-Chester. (*Id.* at 15.)  He seeks $1 million in damages for the

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

injuries he sustained due to his exposure to the OC spray and requests that Strawther be reprimanded or terminated.  (*Id.* at 7.)

## II.    STANDARD OF REVIEW

The Court grants Baker leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Baker is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Baker brings his claims pursuant to § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state

law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have

personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207.

Additionally, there are "two general ways in which a supervisor-defendant may be liable for

unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d

307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences,

established and maintained a policy, practice or custom which directly caused [the] constitutional

harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d

Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983

if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as

the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional

conduct." *Id.*; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal

involvement requires particular 'allegations of personal direction or of actual knowledge and

acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

The Court construes the Amended Complaint as raising claims under the Eighth

Amendment for excessive force based on the use of OC spray on Baker and for deliberate

indifference to Baker's medical needs based on the failure to provide Baker with medical

attention after he was sprayed. For the following reasons, the Court will dismiss Baker's claims

with the exception of his excessive force claim against Strawther, because he has not alleged

sufficient facts to proceed against the remaining Defendants at this time.

### A. Claims Against Defendants Bacco, Captain Eason and Superintendent Eason

Baker names Captain Bacco, Captain Eason and Superintendent Eason as Defendants in

this case because, based on their high-level positions at SCI-Chester, they were generally

responsible for running the facility and training officers.  (ECF No. 4 at 15.)  As explained above, a defendant is not liable for civil rights violations unless he or she was personally involved in the events giving rise to the violations.  By extension, supervisors are not liable solely by virtue of the fact that their subordinates committed constitutional violations absent some measure of conduct traceable to the supervisors themselves.  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").  Nor are generalized allegations that a defendant is "in charge of" or "responsible for" an office or facility sufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  Accordingly, since Baker's claims against Defendants Bacco, Captain Eason and Superintendent Eason are predicated solely on their general responsibilities to operate the prison properly, he has not stated a plausible claim against them.

### B.  Excessive Force Claim Against Defendant Strawther

Baker's primary claim against Defendant Strawther is that Strawther used excessive force by spraying him with OC spray on September 15, 2021.  The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the

prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, Civ. A. No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). The factors used to determine whether the force applied was excessive include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) ''the extent of injury inflicted'[3]; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (*per curiam*) (explaining that the use of chemical agents is not a per se constitutional violation).

Baker alleges that Strawther sprayed him even though the force was "not necessary" because he was not a threat to himself or those around him, and because Strawther did not give him a direct order prior to resorting to the OC spray. (*Id.* at 7 & 14.) In other words, Baker appears to be alleging that Strawther's use of OC spray was wholly unprompted and that lesser measures may have been appropriate. Although Baker did not provide additional details about

---

[3] Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered . . . to state a claim for wanton and excessive force." *Brooks*, 204 F.3d at 104. Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. *Id.* at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

the incident, at this early stage of the litigation, his allegations, construed liberally, are sufficient to proceed.

### C. Deliberate Indifference Claims Against Defendants Strawther, Stewart, Valasquez and Patton

Baker's claims against Defendants Stewart, Valasquez and Patton are best construed as claims that they acted with deliberate indifference to Baker's medical needs by failing to provide him medical treatment upon arriving on the scene after he had been sprayed.[4]  Baker also appears to be bringing such a claim against Defendant Strawther.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

---

[4] There is no basis for a failure to protect or failure to intervene claim here.  Defendants Stewart and Valasquez are alleged to have arrived on the scene fifteen minutes after Baker was sprayed and Defendant Patton is alleged to have been "outside [Baker's] door after [he] was sprayed." (ECF No. 4 at 14-15.)  Since none of these Defendants were present when the OC spray was used, they could not have intervened or taken any other action to prevent it.  *See Enoch v. Perry*, Civ. A. No. 19-00026, 2020 WL 4057643, at *10 (W.D. Pa. July 20, 2020) ("Because the Amended Complaint makes no allegation that Defendants Sawteller, Kellerman, Hill, Bell, and Lee had an opportunity to intervene or could do so, this claim will be dismissed. Simmons has not asserted that any of these DOC Defendants were present at either incident of pepper spray." (citing *Allen v. Eckard*, 804 F. App'x 123, 126 (3d Cir. 2020)).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Courts in this Circuit are somewhat inconsistent on the issue of whether experiencing effects from exposure to chemical agents constitutes a serious medical need.[5] *Compare Klein v. Madison*, 374 F. Supp. 3d 389, 424 (E.D. Pa. 2019) ("[T]he mere fact that the plaintiff suffered injuries from an officer's use of typical detention tools which may cause pain, *e.g.*, pepper spray and handcuffs, does not automatically convert any injuries to 'serious medical conditions.'"); *McCamey v. Craig*, Civ. A. No. 15-1108, 2016 WL 5816821, at *5 (W.D. Pa. Oct. 15, 2016) (finding plaintiff failed to allege a serious medical need with respect to pepper spray incident because "[i]t is expected that there would be pain and discomfort after being exposed to pepper-spray" and noting that "simply alleging 'excruciating pain' is insufficient"); *Wade v. Colaner*, Civ. A. No. 06-3715, 2009 WL 776985, at *11 (D.N.J. Mar. 20, 2009) ("[T]he normal effects of pepper spray on a person, *i.e.* burning, are not of the kind to constitute a serious medical need.") *with Snider v. Motter*, Civ. A. No. 13-01226, 2016 WL 4154927, at *7 (M.D. Pa. June 2,

---

[5] "The nature of pepper spray is to cause pain that dissipates without causing serious injury." *Frederick v. Hanna*, Civ. A. No. 05-514, 2006 WL 3489745, at *8 (W.D. Pa. Dec. 1, 2006) (internal quotations and citation omitted).

2016), *report and recommendation adopted*, 2016 WL 4140728 (M.D. Pa. Aug. 4, 2016) ("[E]xposure to pepper spray has been found to be a 'serious' medical need, sufficient to support a medical deliberate indifference claim."); *Passmore v. Iannello*, Civ. A. No. 12-90, 2013 WL 625409, at *7 (W.D. Pa. Feb. 20, 2013) (finding a serious medical need after exposure to pepper spray because "a lay person can readily recognize that an individual exposed to pepper spray is in need of some medical assistance to alleviate the effects of the spray"), *aff'd* 528 F. App'x 144 (3d Cir. 2013).  However, a failure to decontaminate or otherwise provide medical treatment for a prisoner exposed to OC spray can support an Eighth Amendment claim under circumstances in which the failure to provide treatment "could result in further significant injury or the unnecessary and wanton infliction of pain."  *See Bomar v. Wetzel*, Civ. A. No. 17-1035, 2020 WL 907641, at *5 (W.D. Pa. Feb. 3, 2020) (internal quotations and citations omitted), *report and recommendation adopted*, Civ. A. No. 17-1035, 2020 WL 906720 (W.D. Pa. Feb. 25, 2020); *Cummings v. Smith*, Civ. A. No. 09-335, 2013 WL 5377376, at *2 (E.D. Pa. Sept. 25, 2013) (explaining that courts have held "the failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for the violation of the Eighth Amendment, where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain") (internal quotations and footnote omitted).

As pled, Baker has not alleged sufficient facts to state a claim for deliberate indifferent to his serious medical needs because his allegations are too sparse.  Defendants Stewart, Valasquez and Patton were allegedly present "after" or within fifteen minutes of the use of OC spray on Baker and failed to provide medical treatment despite allegedly being aware of Baker's need for such treatment.  However, Baker has not alleged facts from which it could be plausibly inferred

that these Defendants were aware that Baker suffered from any conditions beyond the initial

effects of being sprayed, that he was in considerable pain, or that he required immediate medical

treatment at that time.  It is also unclear whether Baker was permitted to shower or otherwise

decontaminate even if he was not offered medical assistance, and what medical treatment Baker

is alleging the Defendants should have been provided at that time.  Although Baker generally

alleges that he experienced chemical burns, problems breathing and issues with his sinuses, the

Amended Complaint does not make clear whether Baker experienced any or all of these

symptoms in the presence of these Defendants or whether he informed these Defendants of these

or any other medical concerns.  The same is true with regard to Baker's allegation that Strawther

"walked away" after spraying him without providing medical attention.  In sum, Baker has not

alleged sufficient facts at this time to state a plausible claim that any of these Defendants were

deliberately indifferent to his serious medical needs by failing to summon medical staff or

otherwise call for medical attention in the time period shortly after he was sprayed.[6]  *See Wade*,

2009 WL 776985, at *11 (finding defendants' decision not to immediately call for an ambulance

after spraying arrestee with pepper spray did not rise to the level of deliberate indifference); *see*

*generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here

---

[6] Baker initiated this lawsuit by filing what was essentially a request for a complaint form so he
could pursue his claims.  (ECF No. 1.)  In that request, he also provided a short description of the
claims he intended to pursue, including allegations that after he was sprayed he was "denied
medical attention for an excess of 30 minutes.  The psych doctor was called after I was sprayed
and escorted to medical for treatment." (*Id.* at 1.)  Given the limited nature of the allegations in
the Amended Complaint, it is unclear whether this thirty-minute delay serves as the basis for
Baker's deliberate indifference claims or that this thirty-minute delay constitutes deliberate
indifference under the circumstances.  *See Passmore*, 528 F. App'x at 148-49 (twenty-minute
delay in providing a shower and medical treatment to a prisoner subjected to pepper spray "does
not amount to deliberate indifference to a serious medical need").

have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### D.  Claims Against Defendants Crookus and Mrs. Morris

Baker alleges that Defendant Crookus "was involved in the incident due to the fact he opened my wicket to hand me my meal tray" (ECF No. 4 at 14), and that Defendant Morris "was involved cause she was called after I was OC sprayed and she was trying to find out what happened," (*id.* at 16).  In other words, Crookus is alleged to have handed Baker a meal tray at some point prior to the incident beginning, and Morris is alleged to have looked into what happened to Baker after it was concluded.  These allegations do not suggest that these Defendants acted with excessive force or deliberate indifference and do not suggest any other basis for a constitutional claim against these Defendants.  Accordingly, the Court will dismiss Baker's claims against Defendants Crookus and Morris.

### IV.     CONCLUSION

For the foregoing reasons, the Court will grant Baker leave to proceed *in forma pauperis* and dismiss all claims with the exception of his excessive force claim against Defendant Strawther based on the use of pepper spray on September 15, 2021.  Baker will be given the option of proceeding at this time on his remaining claim or filing a comprehensive second amended complaint.  An appropriate Order follows, which in part provides further guidance to Baker about his options for proceeding.

BY THE COURT:

/S/Joel H. Slomsky, J.
**JOEL H. SLOMSKY, J.**